UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH HAMMONS,

    Plaintiff,

v.

CITY OF LIVONIA, DEAN LANGLEY, ADAM KALZA, and PATRICK MOUG,

    Defendants.

Case No. 13-15134

Hon. Patrick J. Duggan

## OPINION AND ORDER (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND (2) DENYING DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

    Plaintiff Keith Hammons, who was arrested on July 9, 2013 but never charged with a crime, initiated this civil rights action against Defendant City of Livonia as well as Defendants Dean Langley, Adam Kalza, and Patrick Moug (the "Individual Defendants"), each of whom was employed by the City as a police officer at the time of Plaintiff's arrest. Plaintiff brought suit pursuant to 42 U.S.C. § 1983, alleging that his Fourth Amendment rights were violated by the purportedly unlawful arrest. Invoking this Court's supplemental jurisdiction, 28 U.S.C. § 1367, Plaintiff's Complaint also contains counts for the state-law torts of false arrest and false imprisonment. As relief, Plaintiff seeks an unspecified amount of damages (leading this Court to conclude that the Individual Defendants

are named in either their individual capacities or both their individual and official capacities), including exemplary and punitive damages, with interest accrued, as well as attorney's fees, costs, and expenses.

Presently before the Court are (1) Defendants' Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56,[1] (ECF No. 17), and (2) Defendants' Motion for Rule 11 Sanctions, (ECF No. 15). Plaintiff declined to respond to either motion. Having determined that oral argument would not significantly aid the decisional process, the Court dispensed with oral argument pursuant to Local Rule 7.1(f)(2). For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment but denies Defendants' Motion for Rule 11 Sanctions.

## I. MOTION FOR SUMMARY JUDGMENT

**A. Factual and Procedural Background**

*1. Undisputed Material Facts*

*a. Pre-Arrest Investigation*

At the time of the events described herein, Plaintiff worked at Tennyson Chevrolet. (Pl.'s Dep. 8, Defs.' Mot. Summ. J. Ex. B.) During the period the

---

[1] Defendants' motion is improperly labeled as a "Motion for Summary Disposition." Because there is no such motion in federal court, the Court refers to the summary disposition motion as one for summary judgment.

events transpired, Tennyson Chevrolet reported that several vehicles had been stolen from the dealership.

On June 11, 2013, the Livonia Police Department received a report from an individual employed at Tennyson Chevrolet that a vehicle had been stolen from the dealership parking lot and that the vehicle's keys were also missing. (Investigatory File 4, Defs.' Mot. Summ. J. Ex. A.) Police officers recovered the stolen vehicle later that day in Belleville, Michigan. (*Id.*) An investigation of the vehicle identified various potential suspects by way of fingerprints. (*Id.*)

On June 24, 2013, police officers from the Grosse Pointe Park Police Department contacted a detective at the Livonia Police Department to inform him that a vehicle Tennyson Chevrolet had reported as stolen to ON STAR was located in Detroit. (*Id.* at 7.) The vehicle was recovered and three suspects were arrested. (*Id.*) Upon questioning, two of the suspects indicated that a man named Keith from Tennyson Chevrolet was involved in the automobile thefts. (*Id.*)

This information led one of the investigating officers to contact the dealership in effort to ascertain whether a man named Keith worked there and, if so, to elicit additional information. As a result of this conversation, the officer learned that a man named Keith Hammons (Plaintiff) worked at the dealership and printed a copy of his driver's license photograph. (*Id.*) The police officer returned to the interview room with the photograph in hand and, without prompting, the

suspect being interviewed identified the man in the photograph as Keith from Tennyson Chevrolet. The suspect went on to explain "that Keith looked younger in person than in the photo and that he has long hair." (*Id.*) The other suspect, who "also stated that a Keith from Tennyson was involved in the theft of vehicles from the dealership[,]" "claimed to have never seen [K]eith." (*Id.*)

      b.     *Plaintiff's Arrest*

On July 9, 2013, Defendant Moug, "having knowledge of multiple vehicles being stolen from Tennyson and that Keith Hammons was identified by [a suspect in the automotive thefts] as the person who sold him the" vehicle, "instructed dispatch to have a patrol officer arrest Keith Hammons at Tennyson Chevrolet." (*Id.* at 8.) Defendant Moug's instruction was not based on the issuance of an arrest warrant, as one was never obtained. (Compl. ¶ 27; Answer ¶ 27.) Defendants Langley and Kalza were on patrol at the time and responded to dispatch's request to travel to Tennyson Chevrolet.

When Defendants Langley and Kalza arrived at the dealership, Plaintiff was on his lunch break; the police officers, therefore waited for him in the general manager's office. When Plaintiff returned to the dealership, he was placed under arrest. (Pl.'s Dep. 6, 30, 32.) Plaintiff inquired about the circumstances underlying his arrest, and either Defendant Langley or Kalza informed him that he "was being arrested for driving illegal vehicles." (*Id.* at 7, 32.) The police officers escorted

Plaintiff to their vehicle in handcuffs and transported him to the Livonia Police Department, where he was interviewed by Defendant Moug. (*Id.* at 30, 32.) After being advised of his *Miranda* rights, Plaintiff denied any knowledge of criminal activity at the dealership. The interview lasted approximately thirty minutes, after which Plaintiff was placed in a holding cell. (Investigatory File 8, 16, 17.)

Plaintiff testified at his deposition that he was arrested "around 3:12, and I was at the precinct almost all the way through the night till about 7:00 o'clock the next morning, and that's when I had my real bad chest pains[.]" (Pl.'s Dep. 44.) Plaintiff informed police officers of his symptoms and was transported to the hospital. (*Id.* at 6.) While at the hospital, Defendant Moug "informed the [Livonia Police Department] dispatch to release Hammons." (Investigatory File 8.)

Subsequent investigation by the Livonia Police Department identified another potential suspect at Tennyson Chevrolet. (*Id.* at 9-10.) Ultimately, the case was closed due to "lack of evidence[.]" (*Id.* at 10.)

### 2. *Procedural History*

On December 20, 2013, Plaintiff filed a complaint containing the following counts: Count I – Violation of 42 U.S.C. § 1983 (for lacking probable cause to arrest as required by the Fourth Amendment to the United States Constitution); Count II – False Arrest; and Count III – False Imprisonment. Defendants

answered Plaintiff's Complaint on January 27, 2014 and set forth a multiplicity of affirmative defenses.

The Court held a scheduling conference on February 12, 2014. Defendants submitted a preliminary witness list on April 30, 2014 and Plaintiff filed a witness list on May 15, 2014. This is the last filing the Court received from Plaintiff.

On June 12, 2014, Defendants filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11. Plaintiff did not respond.

Defendants filed a summary judgment motion pursuant to Rule 56 on July 11, 2014. Once again, Plaintiff did not respond.

**B.  Governing Legal Standard**

Federal Rule of Civil Procedure 56 instructs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] A court assessing the appropriateness of summary judgment asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quotation omitted).

**C.  Analysis**

---

[2] Defendants' citation to Rule 56(c) ignores that the Federal Rules of Civil Procedure were amended in 2010. (Defs.' Summ. J. Br. 10.)

Although pursuing relief under three distinct legal theories, the gravamen of Plaintiff's lawsuit is that the Individual Defendants lacked probable cause to arrest him, therefore rendering his arrest unlawful.[3] Defendants contend that there are no lingering questions of fact "preventing this Court from dismissing" Plaintiff's case on the merits. The Court agrees.

### 1. *Plaintiff's § 1983 Claim Fails as a Matter of Law*

In his Complaint, Plaintiff, using the statutory vehicle of § 1983, alleges that Defendants violated his Fourth Amendment rights by arresting him without probable cause.[4,5]

---

[3] The Court notes that Plaintiff's Complaint contains no allegations in support of his claims against the City.

[4] Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. This statute "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir. 2000).

[5] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable

7

"The Fourth Amendment guarantees that 'government officials may not subject citizens to searches or seizures without proper authorization.'" *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 871 (6th Cir. 2012) (quoting *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009)). Plaintiff's § 1983 claim therefore hinges on whether Defendants possessed the requisite authority to place him under arrest.

It is undisputed that Defendants never obtained an arrest warrant. (Compl. ¶ 27; Answer ¶ 27.) However, a warrantless arrest does not necessarily translate into an illegal arrest: "A police officer having probable cause to believe that a criminal offense has been committed may make a warrantless arrest without offending the Fourth Amendment." *Sutton*, 700 F.3d at 871; *Devenpeck v. Alford*, 543 U.S. 146, 152, 124 S. Ct. 588, 593 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.") (citations omitted). Because "[t]he validity of [an] arrest does not depend on whether the suspect actually committed a crime[,]" *Brooks*, 577 F.3d at 706 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S. Ct. 2627, 2631 (1979)), "'in order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause[,]'" *id.* (quoting *Fridley v. Horrighs*, 291 F.3d 867,

---

cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

872 (6th Cir. 2002)). Despite Plaintiff's conclusory assertion that Defendants lacked probable cause to arrest him, a review of the Investigatory File reveals an arrest supported by probable cause.

"Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2002) (quotation omitted). The question of whether Defendants possessed probable cause to believe that an offense had been committed and that Plaintiff was involved in its commission is a question that this Court may properly decide as a matter of law. *Rhodes v. Pittard*, 485 F. App'x 113, 115 (6th Cir. 2012). This is because Defendants have submitted the Investigatory File and Plaintiff has not endeavored to challenge the veracity of its contents. According to the contents of this file, prior to arresting Plaintiff, Defendant Moug had statements from two individuals directly linked to the stolen vehicles identifying a man named Keith who worked at Tennyson Chevrolet as providing them with the keys to the stolen vehicles. Plaintiff, whose first name is Keith, worked at Tennyson Chevrolet. One of the two individuals identified Plaintiff from a photograph during police questioning and supplied additional information regarding how Plaintiff's appearance at the time differed from the photograph.

9

It is undisputed that a crime occurred and the information in the file supplied to this Court would lead a reasonably prudent person to conclude that Plaintiff was involved in the crime. That charges were never instituted against Plaintiff is not dispositive of the issue of whether Defendants possessed probable cause to arrest him. *Logsdon*, 492 F.3d at 342-43 (explaining that the law does not require a police officer to conduct a quasi-trial before he can make a warrantless arrest).

Because the Court concludes that Plaintiff's arrest was supported by probable cause, his § 1983 claim, which requires Plaintiff to establish "the deprivation of a right secured by the Constitution or laws of the United States[,]" necessarily fails as a matter of law.[6] *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010) (quotation omitted).

### 2. *Plaintiff's State Law Claims Fail as a Matter of Law*

In the State of Michigan, the intentional torts of false arrest (Count II) and false imprisonment (Count III) require an unlawful arrest and imprisonment, respectively.[7] In other words, "a claim of false arrest or false imprisonment cannot

---

[6] The Court's resolution of the threshold probable cause issue precludes the necessity of addressing Defendants' remaining arguments, such as the applicability of the collective knowledge rule and whether are shielded by qualified immunity.

[7] In *Lewis v. Farmer Jack Division, Inc.*, 415 Mich. 212, 232 n.4, 327 N.W.2d 893, 901 n.4 (1982), the Michigan Supreme Court elaborated upon the differences between these torts:

10

be sustained if the arrest was legal." *Odom v. Wayne Cnty.*, 482 Mich. 459, 481, 760 N.W.2d 217, 229 (2008).

Plaintiff's arrest was entirely compatible with the Fourth Amendment's probable cause requirement. Because the arrest was lawful, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's state law claims.

Having determined that Defendants are entitled to summary judgment on all three counts asserted in Plaintiff's Complaint, the Court turns to Defendants' request for sanctions.

## II. MOTION FOR RULE 11 SANCTIONS

On June 12, 2014, approximately one-and-a-half months prior to the close of discovery, Defendants filed a Motion for Rule 11 Sanctions. In this motion, "Defendants not only ask that sanctions be imposed by virtue of the filing of the Complaint," they also ask that the Court be mindful of the various opportunities

---

> False arrest and false imprisonment as causes of action are said to be distinguishable only in terminology. The difference between them lies in the manner in which they arise. It is not necessary, to commit false imprisonment, either to intend to make an arrest or actually to make an arrest. However, a person who is falsely arrested is at the same time falsely imprisoned, and an unlawful arrest may give rise to a cause of action for either false arrest or false imprisonment. Thus, it has been stated that false arrest and false imprisonment are not separate torts, and that a false arrest is one way to commit false imprisonment; since an arrest involves a restraint, it always involves imprisonment.

*Id.* (internal quotation marks and citations omitted).

11

Plaintiff and Plaintiff's counsel had to voluntarily dismiss the action.[8] (Def.'s Rule 11 Br. 14.)

Rule 11 of the Federal Rules of Civil Procedure provides that by presenting to the court a pleading, written motion or other paper, an attorney "is certifying that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the document satisfies the following:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

---

[8] It is not entirely clear whether Defendants seek sanctions against Plaintiff in addition to Plaintiff's counsel. Because it appears that Defendants seek the imposition of sanctions at least in part on the basis of the frivolousness of Plaintiff's legal position, the Court notes that the imposition of sanctions against Plaintiff in connection with this contention would be improper. Fed. R. Civ. P. 11(c)(5)(A) ("The Court must not impose a monetary sanction . . . against a represented party for violating Rule 11(b)(2)[.]").

Fed. R. Civ. P. 11(b).  Defendants seek the imposition of sanctions under subsections (2) and (3).

Prior to awarding sanctions pursuant to Rule 11, a court must ascertain whether the moving party has complied with the procedural requirements set forth in the rule.  One requirement is that the motion be "made separately from any other motion[.]"  Fed. R. Civ. P. 11(c)(2).  Another requirement is a two-step process set forth in the same subsection, known as the "safe harbor" provision.  This provision requires a party intending to file a motion for sanctions with the court to "first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court."  *Ridder v. City of Southfield*, 109 F.3d 288, 293-94 (6th Cir. 1997).  This two-step procedure allows the opposing party twenty-one days to withdraw the challenged paper, claim, allegation, etc., and thus avoid sanctions.  *Id.* at 294.  In the instant action, Defendants have fully complied with the mandatory procedures delineated in the rule.  (Defs.' R. 11 Mot. Exs. A, C.)

If the opposing party does not withdraw the challenged item and "[i]f, after notice and a reasonable opportunity to respond," a court determines that subsection (b) has been violated, Rule 11 provides that the court "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule[.]"  Fed. R. Civ. P. 11(c)(1); *see also Rentz v. Dynasty Apparel Indus.*, 556 F.3d 389, 395 (6th Cir.

2009) ("Whereas the pre-1993 rule made the imposition of sanctions for violations mandatory, sanctions are discretionary under the amended rule."). The rule limits sanctions "to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). Rule 11(c)(4) describes the nature of sanctions courts may impose for a violation of the rule.

Courts evaluating a motion for Rule 11 sanctions review "[t]he conduct of counsel . . . subject [to] a sanction request . . . by an objective standard of reasonableness under the circumstances." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (citation omitted). Courts are "expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Id.* (quotation omitted). This reasonableness inquiry "is not a one-time obligation." *Id.* (quotation omitted). "[T]he plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings[.]" *Id.* (alteration in original) (quotation omitted); *see also Rentz*, 556 F.3d at 395 ("The . . . rule imposes on litigants a 'continuing duty of candor,' and a litigant may be sanctioned 'for continuing to insist upon a position that is no longer tenable.'") (quotation omitted); Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment) ("[I]f evidentiary support is not obtained

after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention.").

Defendants first argue that the filing of the lawsuit in the first instance amounts to sanctionable conduct under subsection (b)(2) because of the "qualified immunity filter" and the "difficult[y of] establish[ing]" a municipal liability claim. (Defs.' R. 11 Br. 10-11.) This argument is unavailing as imposing sanctions for failing to consider whether a defendant would ultimately be shielded by qualified immunity would not only "chill vigorous advocacy[,]" but would impose upon civil rights claimants an onerous burden at the pleading stage. *Tahfs v. Proctor*, 316 F.3d 584, 595 (6th Cir. 2003). Further, nothing in the record suggests that Plaintiff's counsel was in possession of the Investigatory File prior to initiating this lawsuit. In short, the Court finds no violation of Rule 11(b)(2).

Defendants also contend that the Court should grant the motion for sanctions on the basis that Plaintiff's counsel had several opportunities to voluntarily dismiss the action, particularly after receipt of the Investigatory File, and therefore violated Rule (b)(3). (Defs.' R. 11 Br. 14.)

In this case, no Rule 12 motion was filed and the Court's scheduling order, entered on February 12, 2014, provided that the discovery period closed on July 31, 2014. Yet Defendants filed the pending Rule 11 motion on June 12, 2014 (which, by virtue of Rule 11's safe harbor provision, was dated May 20, 2014),

15

roughly a month-and-a-half before the close of discovery. *Cf. Tahfs*, 316 at 594 (distinguishing the propriety of Rule 11 motions filed in conjunction with motions to dismiss and those filed "after discovery is complete and a motion for summary judgment under [Federal Rule of Civil Procedure] 56 is before the Court").

The Court notes that it is fully aware of the correspondence defense counsel sent to Plaintiff's attorney imploring him to dismiss the action or to narrow the issues.[9] While the Court believes Plaintiff's counsel probably should have realized that his client's claims were factually unsupportable and either amended or withdrawn the Complaint around the time he received the Investigatory File, "reviewed its contents, and declined to conduct further investigation or discovery[,]" *Dearborn St. Bldg. Assocs., L.L.C. v. Huntington Nat'l Bank*, 411 F. App'x 847, 852 (6th Cir. 2011), Rule 11(b) "does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses[,]" Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment). Here, Plaintiff's counsel did not continue to advocate his client's claims; indeed, he ceased advocating.

Even if Plaintiff's counsel could have or should have dismissed the action, thereby violating subsection(b)(3), it does not follow that the Court must sanction

---

[9] Correspondence attached to Defendants' Motion reflects that defense counsel began suggesting his intent to file a Rule 11 motion on March 5, 2014, three weeks after the Court issued its scheduling order. (Defs.' R. 11 Mot. Ex. D.)

16

counsel. "Because the district court knows best how to regulate its forum, it has broad discretion in determining when a sanction is warranted and what sanction is appropriate." *Nieves v. City of Cleveland*, 153 F. App'x 349, 352 (6th Cir. 2005) (citation omitted). Although Defendants do not specifically state what type of sanction they seek, language used in their brief implies a request for monetary relief. The Court declines to award this relief.

The advisory committee notes to Rule 11 provide that courts have several options when sanctioning a party, "such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; [or] ordering a fine payable to the court[.]" Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment). As this list illustrates, the rule "specifically note[s] that a sanction may be nonmonetary as well as monetary." *Id.* Given Rule 11's primary purpose is that of deterrence, not of compensation, "the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty." *Id.* When "unusual circumstances" are present, "particularly for (b)(1) violations," effective deterrence may require that either all or a portion of a monetary sanction "be made to those injured by the violation." *Id.* Defendants do not allege that Plaintiff's counsel (or Plaintiff) filed the lawsuit for an improper purpose as described in (b)(1) and the Court does not believe that this

17

case presents the type of unusual circumstances warranting Defendants' request for monetary compensation.

In sum, the Court does not condone the conduct of Plaintiff's counsel. In fact, the Court admonishes Plaintiff's counsel that should he engage in such conduct before the undersigned again, it very well may result in the imposition of sanctions. However, in exercising its broad discretion, the Court does not believe that an order requiring the payment of sanctions to sanctions would serve any deterrent value.

### III. CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court concludes that Defendants have shown that there are no genuine disputes as to any material facts and that they are entitled to judgment as a matter of law. The Court therefore **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 17). The Court does not, however, believe that the circumstances present in the instant action warrant the imposition of monetary sanctions payable to Defendants. As such, the Court **DENIES** Defendants' Motion for Rule 11 Sanctions (ECF No. 15).

**IT IS SO ORDERED.**

Dated: September 15, 2014

                                                s/PATRICK J. DUGGAN
                                                UNITED STATES DISTRICT JUDGE

Copies to:

**Gregory J. Stempien, Esq.**
**Eric S. Goldstein, Esq.**